The next argument is in Contech Stormwater v. Baysaver Tech, Appeal 1206 from the current year. Mr. Butler, Mr. Zito, please come forward. Could we have silence in the courtroom, please, so we can proceed with the next case? Mr. Butler, we'd like to proceed as soon as you're ready. Good morning to you, sir. Good morning, Your Honors. Welcome to the court. Please proceed. Thank you. May it please the court, the appellant is here to challenge the district court's construction of three of the five elements of independent claim one of the 527 patent. I thought you were here to contest the summary judgment of non-infringement. Yes, sir. It may be based on some claim construction. It's based on the claim construction. You're challenging a summary judgment grant, adverse to you. We are challenging a summary judgment grant that was based upon the claim construction of three of the elements of independent claim one. Would you agree that if the trial court were correct in any of the three constructions that we would have to affirm? Yes. So you have to show that all three were wrong? Yes. Proceed. There is a common thread that runs through each of the three erroneous claim constructions. In each instance, the court improperly imported restrictions into the claim language from the patent's description of the preferred embodiment. How so? The opinion, if you look at it, reads like a comparison of the accused device to the description of the preferred embodiment. I'll start with the first one, the definition of… I mean, we get this argument all the time. One side says it's importing a limitation plainly not in a claim based on something in the rest of the patent. The other side says, no, no, it's not importing. It's merely interpreting a word that is in the claim that's ambiguous and it's given some meaning by referring back to what's said elsewhere in the patent. Now, it doesn't help us for you to say it's importing and the other side says, no, it's not importing. Somebody has to show us a basis for reaching a conclusion as to whether we're interpreting words that are in the claim versus, in effect, adding words to the claim that aren't there. Your Honor, and I intend to do that. Let's start with the language water permeable outer surrounding wall. The district court first looked to a definition in a dictionary and concluded that the term wall meant a vertical structure. If it is vertical, necessarily water has to flow horizontally through it. The second step that the court followed was to look at the preferred embodiment, which just happened to depict a cylindrical shaped basket oriented vertically, and conclude that the inventor must have meant that definition in the dictionary because that's what the preferred embodiment showed. And that's the only basis on which the court limited the term wall in the claim language to something vertical. It's our position that the court... It's not ridiculous. I mean, you know, if we look at the encasement of this room, we probably all agree that the walls are the things on the side and the thing above us is the ceiling and the thing we're standing on is the floor. It's not an absurd far-fetched kind of interpretation to say the wall is the more vertical of the surfaces. The unreasonable portion of the definition, Your Honor, is that whether or not something is a wall under the court's definition depends entirely on the orientation of the basket. If I may use one of the diagrams that we have here as an example. In the bottom right-hand corner, the cube certainly has walls around it because there is a vertical structure. Put it on a corner, under the court's definition, it no longer has a wall. Take the cylinder. Under the court's definition, this is the wall. This is not the wall. That's not the wall. Flip it in a different orientation. What was the wall no longer is the wall. What was not the wall suddenly becomes the wall. There is nothing in the language of the patent to restrict the definition of wall to the shape or orientation of the structure. What about the common sense impact of gravity? Whether something is moving sideways versus up and down has big consequences. Water is heavy. You have to pump it, perhaps, or otherwise force it to move, and you're moving it against the force of gravity. So vertical versus horizontal is not necessarily irrelevant if you're moving water. The way in which the patented claim functions, I submit that it is irrelevant because water enters these filter baskets when it elevates around it, and whether it enters the bottom or the side is really irrelevant to the claimed filtering function that's covered by the patent. If you look at what the inventor was trying to invent, the context of the invention here, the inventor was looking for a basket filter that would solve a problem, the problem being large loose bed filters that previously were very difficult to maintain and clean. The concept of the patent is to provide a basket type modular filter that could be easily removed and maintained. There is no basis within the context of that invention to restrict the shape or direction of flow within the basket. But one interpretation of what you're saying is that the patent could have been claimed more broadly and just talked about surfaces instead of about walls, but the claim drafter didn't do it that way. Maybe he could have, but he didn't, and if the public notice function of patents is to be given full force, then maybe he has to be held to his choice of words. Your Honor, we believe that the term wall is sufficiently broad. We believe that the term wall should be defined as the structure that forms the basket to contain the space or material within the basket. Nothing more, nothing less. There is nothing in the patent, again, that restricts or defines or limits the shape of the basket. The basket could be spherical. It could be semi-spherical. It could be cubical. It could be, as in the preferred embodiment, cylindrical. When you say it could be, you mean it would still operate if it were in those varying shapes. Yes, and it would be covered by the claim language of the patent. Well, that's the part that's maybe a little closer. Well, again, we know that baskets take on many, many different forms. There are Easter baskets that are round. There are picnic baskets that are square baskets, again, and they all have walls. Some of them are vertical. Some of them are not vertical. The point being that there is nothing in the claim language to limit the shape of the basket that performs the claimed method. And, again, I suggest that the diagram, which simply shows that whether or not a basket has a wall under the court's definition depends entirely on whether you put the structure upright or on its side, and I believe that in and of itself is an unreasonable definition given that circumstance. Okay. Let's talk about the second claim element that's at issue here, which is establishing a continuous fluid communication. The district court, we believe, got it right in the claim construction portion of its definition. It defined establishing continuous fluid communication to mean bringing into existence or causing a stream of fluid without any interruptions breaking the stream into unconnected segments. Notice what's missing there, any temporal element. That definition does not provide that the uninterrupted stream of fluid must exist throughout the entire duration of the treatment process. But when the court got to applying that claim construction to the accused device, it introduced a temporal limitation. It stated that the patent teaches a method, quote, that allows for continuous fluid communication, quote, even when the filter is only partially full of stormwater. Yes, it does teach that, but it doesn't limit to that. There's nothing in the language of the claim that places any sort of temporal limitation on when the continuous fluid communication must exist. Notice the language of the claim. It talks about establishing continuous fluid communication. It's not limited to establishing at the beginning, at the middle, or at the end. We have in our brief diagrams of the accused device that show that there is continuous fluid communication in the interior drainage space during the normal operation and during the siphon operation of this particular device. I see that I'm in my rebuttal time. I want to just mention very briefly the concept of siphoning. The district court again imposed a limitation that's not contained in the language. The court said that a true siphon is one in which water flows over an intermediate elevation and down. Because the embodiment did not depict a true siphon, then the inventor must have been his own lexicographer and meant something other than a true siphon. There is nothing in the language of the patent to suggest with the requisite clarity, determination, and specificity that the inventor intended to redefine the word siphon. A siphon in its ordinary meaning is the pulling of water as a result of negative pressure that is created by the falling of a column of water. The patent describes it in that manner. That is exactly what the bay filter product does. It creates a negative pressure inside and pulls the water in that case up over an intermediate elevation. But again, there is nothing in the patent to limit the use of the term siphoning to an intermediate elevation or not. I think you've been very clear. Let's hear from Mr. Zito. Thank you. Good morning. Welcome. Good morning, Your Honor. So what's your response to all that? Well, my response is I agree we don't have to look and see whether it's in the preferred embodiment, if it comes from the claim or comes from the other language. As we've established in the brief, what the invention is is going to be defined by what the prior art was before the invention existed, what the inventor contributed, if anything, and what the inventor said to the patent office. And we've shown that siphoning, if you look at page 18 of our brief, we have pictures of siphoning, where the water comes in the bottom. The primary reference the examiner relied upon is Robertson, which shows water comes in the bottom and goes out the top, which is exactly like the accused device. We have siphons, where the water comes in the bottom and goes out the top, and that's the Hasselden, Murphy, and Gates patents, which are also in our brief. We also have patents, a prior art that was cited to me. I don't quite follow your line of reasoning. You seem to be saying because there were certain other patents out there, the district judge's construction of words in this patent had to be correct. It seems like normally we look at this patent to construe words that are in the claim that may be ambiguous more than we look at other patents not being assertive. Correct, Your Honor. And I don't think the words in the claim were ambiguous. The point is, patents where the flow comes in the bottom and goes out the top were cited in the prosecution history. Patents where the flow comes in the sides and goes out the bottom were cited in the prosecution history. So the examiner said, what their argument is, is that a siphon means anything, a basket can be any shape, and continuous fluid communication means anything. None of those have any meaning, it's just anything we want. The examiner said, no, you can't have that, there's prior art. Here's what you get. It comes in the vertical walls and goes out a drain at the bottom, plus you need a valve that closes and opens that drain. Where is it that the examiner said that that's all you get? Where is it that he said that that's the only thing this claim can cover? I mean, if that was his view, he should have required amendments that weren't made. The amendments were made. The examiner said… Show me where. Not in your brief, I want to see it in the prosecution history. The examiner said that because Claim 8 requires the valve, that's allowable. We cited that. I want to see where in the prosecution history siphoning only means coming in from the side and going straight down, which is what you said to us a few minutes ago. No, what siphoning means is coming in from the side, going down, with the use of a valve, and the applicants confirmed that in their petition they filed on April 27th, which is cited on page 34. Yes, but the assertion you made is that the examiner made a strict limitation on what they could claim. And the question was, where did the examiner so state? And you haven't answered that. Counsel, while you're looking for that, I just want to caution you against overstatements. We occasionally get people who do make overstatements, and it's just really disturbing to the court. In your brief, with regard to your appeal, you repeatedly tell me that the district court found bad faith with regard to your appeal. That issue's been established. It's been proven. He made a finding. The district court in this case made no such thing. He suggested that there was evidence introduced to put the issue of bad faith into question, and therefore summary judgment was not appropriate on that basis. But you don't say that. Throughout your entire brief, never once do you allege anything to that effect. You tell me no less than five times that he made a finding of bad faith in this case. And I found that to be very troubling. Look, the judge said the evidence of subjective bad faith, while troubling, is insufficient to establish that the underlying suit was objectively baseless. The court says there's three tests in order to uphold our motion for sanctions or for damages for tortious interference. First test is bad faith. Second test is objectively baseless. And the third test was that the damages were connected. And his determination was not that there exists bad faith, but rather that you introduced evidence that prevented the grant of summary judgment that there was no bad faith. That's different from a factual finding that bad faith exists. Then I misinterpreted the judge's determination, because what I thought the judge said, the conduct crosses the... Show me where. Show me where it is that you're pointing to. The two that I've highlighted are on page 19 of the judge's decision, which is A47. Okay. While some of this conduct may cross the line between fair competition and subjective bad faith, because the judge had established in the TRO hearing at the beginning of the case that if the letters were sent out for the purpose of interfering with contracts, not because of the thought of infringement, which we established... Yeah, but a sentence that keys on the word may hardly sounds like a finding of fact that a certain situation existed. Maybe it did, maybe it didn't. That's what the word may normally implies. Correct. And then the judge goes on on page 22 of the same decision to say the evidence of subjective bad faith. that Baysaver and Acubit offer on the timing, number, and target of the contact letters, which was the only subject of the original TRO proceedings, is simply insufficient to establish that the underlying suit was objectively baseless. I took that to mean that it establishes bad faith, but does not go on to establish baselessness. That's how I read what the judge wrote there, that we establish bad faith, we do not establish baselessness. Let's go back to the underlying question, which is, where does the examiner say what you claim he said? The examiner allowed claim 8 as allowable subject matter, but rejected it because it was indefinite, and said it establishes... You're reading examiner words? Examiner words. From exactly where? On page 37 of the brief, which is A189-190. 189-190. In the appendix. And exactly what did he say? It is unclear with what the drainage conduit has continuous fluid communication with. It is suggested that the claimer cite the drainage space is in continuous fluid communication with the treated water outlet, the treated water outlet extending from the drainage space to the drainage conduit. The location of the valve is also felt to be unclear. The applicant then... I guess I'm troubled by how that describes, or how that should be construed as somehow a statement by the examiner that the only thing they get is water coming in the sides and going straight down with the valve. That was your assertion. Because Robertson, the examiner went on to say on page A190 of the appendix, claims 1 and 4 are rejected as being anticipated by Robertson et al. See figure 2 lines, whatever. Note in figure 2, that's Robertson, the flow is initially horizontal through the bed and then vertically rises to the outlet disposed above the bed. So you can't have vertically in rising to the outlet above the bed. What you get is... This is now Zito talking. We have to limit ourselves to the examiner's word, not your extension of the examiner's word, when your argument is that the examiner has already decided this issue and we can see his decision by reading his words. We can't add your words, we have to be limited to what the examiner himself said. Robertson is initially horizontal through the bed and then vertically rises to the outlet disposed above the bed. He's saying this is what you cannot have. He's saying... Horizontally in and vertically rising. What he's saying is, if you look at what he says about claim 8, you could have horizontally in and then it has to have continuous fluid communication with the drain out the bottom. And after this rejection, there were amendments made, right? And arguments as well. And amendments. And so why isn't it the case that those amendments wouldn't be sufficient given that they distinguish the claim from Robertson to overcome this, even if it were such a disclosure? Why wouldn't those amendments be sufficient? Those amendments were sufficient. And what were the sum total of all of the amendments that were made? Are the elements C and D, as I've indicated, which are the elements which say that the... Because I'm looking and I see more than half of the claim was changed after this rejection. More than half. Correct. To recite what was in claim 8, which is... And I now witness an awful lot of stuff in this claim that distinguishes it from Robertson. A lot of stuff. Lots and lots of stuff. It doesn't seem to me... How do you conclude that these amendments result in them giving up anything except what comes in and goes down? Because in order to establish continuous fluid communication, which is not in Robertson, which is what the amendment claims were, you need water that flows... that continually flows. And the only way to get water that continually flows is to come in from the side and go out the bottom. If you come in from any other direction, except, I guess, including the top, you can't get continuous flow. Well, yeah, you can. You can get continuous flow once siphoning occurs. You're predicating your continuous flow argument on the fact that I buy into the siphoning argument. Well, but if adding continuous fluid communication distinguishes over Robertson, Robertson does not have to... No, but why do you say adding continuous fluid communication distinguishes over Robertson? They made umpteen changes to this claim. It's virtually unrecognizable from the first version to this one. Why should I focus in on that exact single change as the one and only distinction over Robertson? Now they are forever foreclosed from entitlement to anything except what comes in and goes down. Because continuous fluid communication is the only change that was made to Claim 1. Claim 1 added... What? No, siphoning was made to Claim 1. That was in the amendment. I'm looking at it on page A, 194. There was a change made to Part A talking about runoff and pollutants. There was a claim, a change to Part B treating the runoff water. There was a claim, another change to Part B to an interior drainage space. There was a change to C, establishing fluid communication between the interior, which is the one you're talking about, and D was also added, siphoning treated water from the drainage space under gravity. Every single element of the claim was substantially changed following that rejection. Maybe I'm reading the prosecution history wrong. Interior drainage space was added to the antecedent basis for D, or rather, C. So this is the same change. C is establishing continuous fluid communication. And the siphoning treated water can only be the siphoning as defined in the invention. Plaintiff's position is that siphoning means what we'd say siphoning is, which is just a gravity drain, and it's also anything else that siphoning can mean. And that's not proper claim construction because a gravity drain isn't siphoning, so it means something different than that. Do you agree, as I understand it, that Plaintiff-Executive is its own lexicographer in this case? Absolutely. And you say that they redefined the word siphoning? Absolutely. Now, here's where the problem comes in, and I don't think that they actually disagree with that. Maybe I'm wrong and they'll tell me I'm rebuttal, but I don't think they disagree with it. I think, though, that you want to say they redefined it and they're only entitled to this, and they say, no, we redefined it and expanded it to include negative pressure, when negative pressure powers water. And so their view, your view is they changed it altogether, they no longer get the ordinary meaning, they only get the preferred embodiment description. And their view is, no, we simply expanded the clear meaning of the word. So how do we contend with that? Well, if you're expanding the clear meaning of the word, then you have to show something in your spec that says, we are including the normal meaning, the old meaning of the word. There's nothing in the patent that would even begin to suggest that it has anything like the real meaning of siphon. But there's nothing in the patent that would begin to suggest they disavowed the clear meaning of the word siphoning. And that's really what we're supposed to look at, aren't we? When we take a word and say, you're no longer entitled to the ordinary meaning of the word, don't you have the burden of proving a clear and unmistakable disavowal of that ordinary meaning? Yes, the clear and unmistakable disavowal is if you define it to mean something completely different, something opposite, not something slightly more inclusive. If they had indicated that siphon could be, if a normal siphon doesn't include a pumping means, and they said, well, when we say siphon, we mean also a pump that pumps the water up and starts the siphon,  Okay, they've expanded the meaning. But if you completely, you'd have to mean this opposite to siphon. A gravity drain is the opposite of a siphon. It's not a siphon. Siphon, the water goes up, as the earlier court that they were also involved with said, as their position in the earlier court was. The normal meaning of siphon is you have to go up over an intermediate elevation and back down. That's the opposite of water just flowing down. Their patent is about water flowing only down. It never goes up. There's no upward vertical component of flow anywhere. So if you define a siphon as opposite to a normal siphon, then you haven't expanded the definition. You have changed the definition. All right, time has expired. Mr. Butler, rebuttal. Thank you. I just want to comment. Desmore, you were referring to siphon. I refer you to column 7 in the patent, A72. The bottom of the column says, however, when a siphon effect is induced, in accordance with the invention, by purging air from the drainage space, a negative pressure develops inside the drainage space. This results in suctioning water through the bed into the drainage space and thence into the drainage conduit. And that's exactly what we're talking about. It's not limited to whether or not the water first proceeds over an intermediate elevation. The concept of gravity, as it's used in the claim, is to distinguish the creation of this negative pressure from, as Mr. Zito said, the use of a pump. The drainage space, the water falls under gravity, and that gravity pulls it down, creates the negative pressure, and then establishes the siphon. Would you agree with the district court that you did act as your own lexicographer with regard to the word siphon? No. No. So you think you're giving it its ordinary meaning, and the ordinary meaning is not up and over. Correct. A siphon can go up and over, but it doesn't have to. I mean, the use of the term siphon in the patent is identical to the use of the term siphon in the material for the bay filter. And I don't believe there is anything that requires... But the bay filter goes up and over. Yes, it does, but it goes up and over... Which is what creates the siphoning. It's the negative pressure of the falling column of water drawn by gravity that creates the siphon in both devices. What evidence was presented by you all on the issue of siphoning and how that meaning ought to be interpreted? Is the only evidence the intrinsic evidence? Yes. There was no extrinsic evidence? No. Okay. All right. Thank you. Thank you both. We'll take the appeal under advisement.